**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 24-cr-00144 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DECOBY JONQUAIL OFFICE | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Decoby Jonquail Office's ("Office") Motion to Dismiss the Indictment. See Record Document 22. Office moves to dismiss the one-count indictment, under which he is charged with possessing a firearm in violation of 18 U.S.C. § 922(g)(1). The United States of America ("the Government") filed an opposition to the motion. See Record Document 24. Office filed a reply. See Record Document 25. After careful consideration of the parties' submissions, and the law applicable before the Court, the Motion to Dismiss the Indictment is **DENIED**.

**BACKGROUND**

On May 9, 2024, in Bossier City, Louisiana, an officer with the Bossier City Police Department made a traffic stop on a vehicle driven by Office. See Record Document 24 at 1. During a search of the vehicle, the officer found a Cobray pistol; model: Mack 11; and caliber: .9mm and ammunition, underneath the driver's seat where Office had been sitting. See id. At the time of the offense, Office had been previously convicted of two felony offenses and was serving a term of federal supervised release. See id.

On April 21, 2021, Office pled guilty to Illegal Use of Weapons or Dangerous Instrumentalities and was sentenced to serve two years hard labor, suspended. See id.;

see also Exhibit 1. On March 1, 2022, he pled guilty in federal court to one count of Felon in Possession of a Firearm. See Record Document 24 at 2. On July 13, 2022, he was sentenced to serve 24 months imprisonment and three years supervised release. See id.; see also Exhibit 2. Office began supervision on March 31, 2023. See Record Document 24 at 2. One of the conditions of his supervised release was to not own, possess, or have access to a firearm or ammunition. See id.; see also Exhibit 3. On May 21, 2024, a warrant was signed for revocation of his supervised release. See Record Document 24 at 2.

On July 24, 2024, a federal grand jury returned a one-count indictment against Office. See Record Document 1. Count one reads:

> On or about May 9, 2024, in the Western District of Louisiana, the defendant, Decoby Jonquail Office, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, in and affecting commerce, to wit: a Cobray pistol; model: Mack 11; caliber: .9mm and ammunition. All in violation of Title 18, United States Code, Section 922(g)(1).

Id. Thus, Office is charged with possession a firearm in violation of 18 U.S.C. § 922(g)(1). See id.

## LAW AND ANALYSIS

### I. Law.

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. However, it is well-established that, ""[l]ike most rights, the right secured by the Second Amendment is not unlimited." D.C. v. Heller, 554 U.S. 570, 626, 128 S. Ct. 2783, 2817 (2008). Thus, under

the Supreme Court's most recent guidance in Bruen, courts must engage in a two-step inquiry to determine whether a regulation placing restrictions on a party's Second Amendment rights is constitutional. Bruen, 597 U.S. 1, 24, 142 S. Ct. 2111, 2129–30 (2022). First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." Id. If the Second Amendment does cover the individual's conduct, the court then must ask whether the government has satisfied its burden of showing "the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Only where the regulation is "consistent with the Second Amendment's text and historical understanding" can it pass constitutional muster. Id. at 26, 2131.

Recently, in U.S. v. Diaz, the Fifth Circuit analyzed an as-applied constitutional challenge to § 922(g)(1) under Bruen. 116 F. 4th 458 (5th Cir. 2024). The Court held that a charge serving as a predicate for a defendant's § 922(g)(1) charge must rely on previous history. Id. at 467. A felon is among "the people" protected by the Second Amendment. Id. at 466. "The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)." Id. at 467. To satisfy its burden under Bruen, "the government must 'identify a well-established and representative historical analogue, not a historical twin.'" Id. Furthermore, the "[e]vidence must be 'relevantly similar' to the challenged law." Id. When a court assesses similarly, it should "consider 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'" Id.

**II. Analysis.**

In his Motion to Dismiss the Indictment, Office specifically challenges the validity of Section 922(g)(1) as it purportedly prohibits his Second Amendment right to possess

and use arms for personal protection and defense. See Record Document 22-2 at 4. Section 922(g)(1) states:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Office argues that, under recent Supreme Court precedent in Bruen and Fifth Circuit precedent in Diaz, § 922(g)(1) is unconstitutional as applied to him. See Record Document 22-2. He contends the Government does not specifically identify any prior convictions that are punishable by imprisonment for a term exceeding one year. See id. at 4. Additionally, the Government has failed to prove that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to him. See id.

In response, the Government argues that Office's status on supervised release and his prior felony convictions both defeat any as-applied challenge. See Record Document 24 at 3. While on supervised release, Office was prohibited from possessing a gun. See id. The Government argues this gun restriction, standing alone, is constitutional and provides a basis separate from § 922(g)(1) to restrict Office's Second Amendment rights. See id. Additionally, the Government contends Office's illegal use of weapons conviction has a common-sense nexus to violence and public safety concerns as discussed in Diaz. See id. at 6. Through the Fifth Circuit's discussion of "going armed" laws in Diaz, the Government argues it is implied that any felony predicate with a common-sense nexus to violence and/or public safety concerns will permit disposition

under § 922(g)(1). See id. at 5. Moreover, both these founding-era "going armed" laws and La. R.S. § 14:94 seek to punish those that have used their guns in a way likely to lead to violence or to upset the public order. See id. at 6. The punishment chosen back then was permanent dispossession of offenders' guns. See id. Thus, the Government maintains that keeping firearms out of the hands of individuals who seek to do harm to others is well within the bounds of the Nation's historical tradition of firearm regulations. See id. at 7.

Office filed a reply, arguing his supervised release status has nothing to do with § 922(g)(1). See Record Document 25 at 2. While his gun possession may be a valid basis for revoking his supervised release, it is a different issue than whether his supervised release status can justify a new conviction under § 922(g)(1). See id. at 3. Additionally, Office contends there is no evidence that colonial-era Americans were punished permanently and severely for possessing firearms after any felony convictions. See id. at 4. He maintains the Government never tries to make the threshold showing that the illegal use or a weapon was severely punishable at the Founding. See id. at 6. Because the Government's arguments are at odds with Diaz and the historical evidence, Office submits the arguments fail, and the motion should be granted. See id.

The first step of the Bruen analysis is satisfied here. The Fifth Circuit has held that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1);" thus, Office's conduct prohibited by § 922(g)(1) is covered by the Second Amendment. Diaz, 116 F. 4th at 467. See U.S. v. William Robinson, No. 22-253, 2024 WL 4827375, at *6 (E.D. La. Nov. 19, 2024). Since the first step is satisfied, the Government has the

burden to demonstrate that regulating Office's possession of a firearm is consistent with the Nation's historical tradition of firearm regulation. Id.

In Diaz, the Fifth Circuit conducted an analysis of "Bruen's historical inquiry into our Nation's tradition of regulating firearm possession by felons in particular." 116 F. 4th at 466. The Court only analyzed Diaz's pertinent criminal history, which consisted of vehicle theft, evading arrest, and possessing a firearm as a felon. Id. In the instant case, Office's pertinent criminal history consists of two prior felony convictions under La. R.S. 14:94 (Illegal Use of Weapon or Dangerous Instrumentalities) and § 922(g)(1) (Felon in Possession of Firearm). Under step two of Bruen, the Government "must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this." Diaz, 116 F. 4th at 467. La. R.S. 14:94(A) provides: "Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being." LA. REV. STAT. § 14:94(A). Section 922(g)(1) is restated above.

In Diaz, the Fifth Circuit held that "[g]oing armed laws are relevant historical analogues to § 922(g)(1)." 116 F. 4th at 471. Going armed laws punished "'those who had menaced others with firearms'" and disrupted the public. Id. at 470–71. The Court found that the burden imposed by these laws on the Second Amendment is comparable to the burden imposed by § 922(g)(1) because "[t]hey both provide for permanent arms forfeiture as a penalty." Id. at 471. Ultimately, the Court held that "[i]mposing permanent disarmament as a punishment is also within our Nation's history and tradition," holding § 922(g)(1) constitutional as applied to defendant Diaz. Id.

In U.S. v. Garner, Judge Donald E. Walter in the Western District analogized the Louisiana statute for aggravated battery with going armed laws. No. 24-00112-01, 2024 WL 4820794, at *4 (W.D. La. Nov. 18, 2024). Under the Louisiana statute, "an individual is convicted of aggravated battery where he or she commits battery with a dangerous weapon." Id. (citing LA. REV. STAT. § 14:34). The court found that both the aggravated battery and going armed statutes "punish and deter in the same way: permanent disarmament." Id. Because of this "sufficient historical analogue," the defendant's indictment under § 922(g)(1) was constitutional as applied to him. Id.

In the instant case, the Court is called to conduct a similar historical analogy with La. R.S. § 14:94. The Government makes a sufficient historical analogue between the Louisiana statute and going armed laws. The Government argues that both laws seek to punish those that have used their guns in a way likely to lead to violence or to upset the public order. See Record Document 24 at 6. Furthermore, like § 922(g)(1), these founding-era laws authorized the permanent dispossession of offenders' guns as a consequence of that crime. See id. The Court agrees with the Government's arguments. There is a sufficient historical analogue between La. R.S. § 14:94 and going armed laws. A violation of either can result in permanent disarmament. Additionally, the purpose behind the establishment of these laws is the same: to protect the public by keeping firearms out of the hands of individuals who seek to do harm to others. Therefore, Office's prior conviction under La. R.S. § 14:94 is consistent with the Nation's historical tradition.

Office's second prior felony conviction is for felon in possession of a firearm under § 922(g)(1). In U.S. v. Crump, the defendant had a prior felony conviction for attempted possession of a firearm by a convicted felon. No. 24-00191-01, 2024 WL 4884420, at *3

(W.D. La. Nov. 25, 2024). Chief Judge Terry A. Doughty of the Western District found the defendant's prior conviction of attempted possession of a firearm by a convicted felon was "consistent with the United States' historical tradition of firearm regulation." Id. In its reasoning, the court cited to Diaz, which held "that regulation of a Possession of a Firearm by a convicted felon conviction was consistent with the United States' historical tradition of firearm regulation since felonies were punishable by death, weapon forfeiture, and based upon various writings and proposal in state constitutions." Id. Therefore, § 922(g)(1) was constitutional as applied to the defendant. Id.

Here, the Court finds that Office's prior felony conviction under § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. Office does not make a compelling argument to find otherwise. Like the court found in Crump, Office's "permanent disbarment of firearms is justified based upon the serious crimes showing [he] may pose a risk of violence or danger to the public." 2024 WL 4884420, at *3. In Diaz, the Fifth Circuit held that § 922(g)(1) fits neatly within our Nation's history and tradition. 116 F. 4th at 471. "The size of these [going armed] laws' burden on the right to bear arms is comparable to that of § 922(g)(1)." Id. Thus, both prior felony convictions are consistent with the Nation's historical tradition of firearm regulation. The Motion to Dismiss is hereby **DENIED**.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Office's Motion to Dismiss the Indictment (Record Document 22) is **DENIED**.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 3rd day of December, 2024.

UNITED STATES DISTRICT COURT JUDGE